complexities of the case are then measured through some variant of the lodestar methodology.

The bankruptcy judges in the District of Massachusetts have retained the lodestar approach in evaluating fees for services rendered to debtors in Chapter 13 cases and have chosen not to adopt a fixed or presumptive fee. Often misunderstood, MLRB 13-7(b) is a rule of procedure rather than one of substance. It provides:

> Unless otherwise ordered by the Court, if debtor's counsel's total compensation prior to confirmation of a plan is $2,500 or less, the disclosure of the compensation in the Rule 2016(b) Statement shall be sufficient notwithstanding compensation for post confirmation services in amount not exceeding $500, and the filing of an itemized application for compensation shall be excused, unless the Court orders otherwise.

The message of Rule 13-7(b) is clear: if the fees of counsel to the debtor in a Chapter 13 case do not exceed $2,500 for prepetition services and $500 for postpetition services, then the attorney need neither amend a lesser disclosure in the attorney's Fed. R. Bankr. P. 2016(b) Statement, nor file a fee application in order to be entitled to payment - unless the Court orders differently. The assumption underlying Rule 13-7(b) is *not* that $3,000 is some form of floor or ceiling for appropriate compensation for debtor's counsel in a Chapter 13 case. Rather, the rule recognizes that it is so unlikely that the Court will disallow compensation of $3,000 or less when an attorney renders beneficial legal services to a Chapter 13 debtor that the preparation of a fee application would waste judicial resources and drive up costs to a debtor whose funds are better spent on a dividend to creditors. The Rule contains the fail-safe clause "[u]nless otherwise ordered by the Court" in order to ensure its underlying premise: that Rule 13-7(b) should have effect only where the Court believes it likely that the debtor receive beneficial services from debtor's counsel.

36

B.  The Various Fee Applications

Consideration of the instant fee applications begins with the selection of the lodestar rate. The United States trustee and the Chapter 13 trustee urge the Court to adopt the billing rate of $225 per hour selected in Grenier and Martinez. Attorney Lafayette's responses are are both inconsistent and inexplicable. While billing in amounts over $300 in each of the instant cases, he testified at the evidentiary hearing in connection with the Case Management Order first that he accepted the Grenier and Martinez rulings, then that they were wrong, and then that he found the inquiry "mind-boggling." More important, Attorney Lafayette offers absolutely no evidence to support any rate at all. In the absence of evidence to the contrary, this Court is left to take judicial notice of the average billing rates in Chapter 13 cases in the Western Division of the District of Massachusetts. This Court agrees with Grenier and Martinez that the average billing rate for services in Chapter 13 cases in the City of Worcester, Massachusetts is in the range of $150-225 per hour, and believes it no different in the four most western counties of this district. But this Court respectfully disagrees with the decision in those cases to place Attorney Lafayette at the upper end of that range. Careless and sloppy work, from which Attorney Lafayette's clients repeatedly required court intervention and rescue, suggest either that Attorney Lafayette's skill level is not consistent with that of the average practitioner or that he is not sufficiently motivated to bring it to that level. Accordingly, this Court sets Attorney Lafayette's lodestar rate at $150 per hour for each of the instant fee applications.

Identification of the number of appropriate billable hours and application of adjusting factors with respect to each of the fee applications now before the court requires more detailed scrutiny.

37

In LaFrance, as noted by the Chapter 13 trustee, the listing of time (and attendant division of labor between Attorney Lafayette and his paralegals) makes little sense. Further, the identification of the amount of the retainer is contradictory with other filings made by Attorney Lafayette. Attorneys must scrupulously maintain the accuracy of their time entries and their billing records. This Court's review of Attorney Lafayette's fee application confirms the Chapter 13 trustee's concerns. Attorney Lafayette, who had the burden to do so, failed to respond to those concerns either in writing or at the evidentiary hearing. Affording Attorney Lafayette with perhaps more benefit of the doubt than deserved, the Court will not reduce the number of hours represented in the fee application, but will acknowledge the problems cited by the Chapter 13 trustee by reducing the final allowance by the sum of $500. The resulting calculation is that Attorney Lafayette spent 12.8 hours at the lodestar rate of $150, for a total of $1,920, to which should be added $176.50 for services rendered by paralegals and $254.16 for reimbursable out of pocket costs.[19] From this amount, the Court will reduce the application by $500 for a total of $1850.66, against which Attorney Lafayette received an initial retainer from the client in the amount of $600.[20]

Review of the remaining cases does not require similar mathematical analysis. There, the deficiencies in service are so substantial as to render moot a review of time

---

[19] Neither the Chapter 13 trustee nor the United States trustee has challenged the rate charged by Attorney Lafayette for work performed by his paralegals or his requests for reimbursement of out of pocket costs.

[20] The Court has not, on this occasion, further reduced the award based on the confusing language in the Rule 2016(b) Statement filed by Attorney Lafayette in this and the following cases. That language should be altered in future cases to avoid reductions in compensation.

38

spent and disbursements incurred. In Oyola, Attorney Lafayette twice filed Schedule C offerings which substantially exceeded any conceivable exemption, and ignored the Chapter 13 trustee's requests for repair until she was forced to bring her objection to the Court. In Rolon, Attorney Lafayette filed the case in Chapter 7, notwithstanding the fact that the debtor could not obtain a discharge there because of the recency of another Chapter 7 discharge in a case in which Attorney Lafayette had also served as debtor's counsel. And, on conversion of the case to Chapter 13, Attorney Lafayette repeatedly filed inaccurate schedules, and even missed a deadline that, for a time, caused the case to be dismissed. In Daigneault, Attorney Lafayette failed to timely amend an obviously unconfirmable plan and then, after the Chapter 13 trustee was forced to file an objection thereto, failed to timely comply with this Court's order to amend that plan. He even missed the deadline for filing his own request for compensation. In Caci, Attorney Lafayette failed to provide a proper disclosure to the debtors with respect to the identity and qualifications of a recommended "expert;" failed also to disclose that he represented that "expert" in another matter; represented that "expert" in a contest in which the debtors here had a conflicting interest; failed to properly advise the debtors with respect to the need to approve the employment of their broker; failed to timely respond to their request that a sale of their property be approved; failed to timely seek reconsideration of orders; failed to prepare appropriate notices to creditors; and failed to timely advise the Court either that a closing date for the sale had been postponed or that a document offered to the Court in one motion was an altered version from that presented in another. Finally, in Davis, Attorney Lafayette made various errors on the debtor's schedules and plan, failed to timely respond

39

to the Chapter 13 trustee's request that he rectify the errors, and failed to timely comply with this Court's order to the same effect.[21]

Attorney Lafayette offers excuses for each of the foregoing lapses. He cites either the disabilities of his computer software, temporary illnesses of his paralegals, or chronic illnesses of his own. None of these justify what Attorney Lafayette has done (or not done) in these cases. The products of computer software must always be reviewed by an attorney who depends on the program. Clients hire attorneys, not computers. Notwithstanding the obvious benefits which computers afford, they have no fiduciary duty toward those who rely upon them; attorneys do. As for paralegals, they do from time to time get sick, or take vacation, or sever their relationship with attorneys. When that happens, an attorney must timely replace those services with those of another paralegal of sufficient skill or step in to do that work him or herself (for which the attorney is presumably more than capable). And when, for whatever reason, that is not possible, an attorney is obliged to seek a continuance before, not after, a Court-ordered deadline has run.

The illness of an attorney presents special concerns, since those services are not easily replaced either on a temporary basis or for an extended period of time. When an attorney has a temporary illness, other attorneys in the case have a duty of courtesy to one another, and the court has a duty to ensure that the illness does not affect the

---

[21] The Court does not here list <u>Bennett</u>, since Attorney Lafayette's request for compensation has already been denied for untimeliness, and that denial has been affirmed by the United States District Court for the District of Massachusetts. The Court would note, however, that, in the <u>Bennett</u> case, Attorney Lafayette also made various errors in the schedules and plan (including listing both federal and state exemptions in Schedule C) and failed to rectify those errors in a timely manner.

administration of justice. Where time is not of the essence, continuances ought to be granted or other accommodations made. But where illness become a daily or weekly excuse for repeated errors made over an extended period of time and which threaten to sacrifice a client's economic well-being, courtesy is no longer a factor. An attorney may simply not permit his or her client to suffer legal harm, even where the excuse is the attorney's long term illness. Many attorneys suffer from long-term or chronic illnesses and manage quite well to represent their clients without sacrificing the rights of those clients. An attorney suffering from such an illness must obtain appropriate assistance or supports to avoid reasonable risks of harm to clients, and, failing that, withdraw from ongoing representations and decline to take on new cases.[22]

This Court finds it hard to believe, and does not believe, that most (if any) of the various errors described in each of the above referenced cases are the result of the various excuses proffered by Attorney Lafayette. But even if the excuses are true, they are not sufficient to overlook the sloppy, careless and unprofessional actions taken by Attorney Lafayette in each of the referenced cases. Clients come to attorneys for a service. Where the service is not provided, or provided poorly, they should not be required to pay for the service, regardless of the validity of the excuse offered. Accordingly, compensation in each of the Oyola, Rolon, Daigneault, Caci and Davis cases will be disallowed and all payments received, except for filing fees, will be ordered disgorged.

---

[22]During the year 2002, Attorney Lafayette filed 316 cases in this district (approximately 26 per month); in the year 2003, 260 cases (approximately 22 per month); and for the first five months of 2004, 118 cases(approximately 24 per month). Furthermore, during this period of time, this Court has frequently granted continuances to permit Attorney Lafayette to travel to far distant locations with bar groups, something not usually within the ability of a person limited by illness.

C. <u>MLRB 13-7(b)</u>

The judges of this district have promulgated MLRB 13-7(b) with the assumption that an attorney relying thereon is generally rendering beneficial legal services to his or her clients. For the reasons set forth above, this Court can no longer maintain that assumption in cases in which Attorney Lafayette represents the debtor. Accordingly, the Court will order that MLRB 13-7(b) shall not apply in such cases. Absent an allowed fee application, Attorney Lafayette shall not be permitted to use fees received hereafter from clients in bankruptcy cases,[23] nor shall the Chapter 13 trustee be permitted to pay fees to Attorney Lafayette. That order will be reviewed at various intervals to determine its ongoing necessity.

In no way should these actions be misinterpreted as attorney discipline. Whether Attorney Lafayette should be practicing before this Court, or any other, is left for the determination of those bodies who have the jurisdiction to say so. <u>See Sheridan v. Michels</u> (In re Sheridan), 362 F.3d 96 (1st Cir. 2004). In <u>Sheridan</u>, the First Circuit Court of Appeals reversed the Bankruptcy Appellate Panel; which had affirmed a bankruptcy judge's ruling suspending an attorney from practice before the Court. The First Circuit held that where a disciplinary proceeding is omnibus in nature, does not arise in the context of an open bankruptcy case, is predicated upon ethical rule violations proscribed by state law and has only a remote or overly speculative effect upon closed bankruptcy cases, a bankruptcy judge has only non-core jurisdiction. <u>Id</u>. at 111-12. None of those conditions are presented here. This is not a disciplinary proceeding that will preclude Attorney Lafayette

---

[23] Until fees are allowed, funds received from clients shall be held in Attorney Lafayette's IOLTA account, as would be the practice in the absence of MLRB 13-7(b).

42

from practice before the bankruptcy courts of this district. The instant issues arise in the context of open cases. The review of fees paid by a debtor to his or her counsel arise under bankruptcy law, most notably 11 U.S.C. § 327 and 329. And the decisions made here will likely positively impact both the debtors now before the court and those that will come before the court hereafter.

Said in perhaps too summary a fashion, the holding of Sheridan is that the Massachusetts bankruptcy courts do not have the power to suspend or disbar attorneys from practice because they do not have the power to admit attorneys to practice. The latter is the province of the United States District Court. But Congress gave to bankruptcy courts the power to determine the proper compensation of attorneys who represent debtors. 11 U.S.C. §§ 327, 329 (2004). And the method by which requests for compensation will be presented to the Court is well within the core jurisdiction of bankruptcy courts. 28 U.S.C. §§ 157(b)(2)(A) and (B). The bankruptcy judges of this district were not required to promulgate MLRB §13-7(b). They could have required applications for compensation to be presented by all attorneys who represent debtors in Chapter 13 cases. By the same token, no judge is precluded from using the saving language contained in that rule ("Unless otherwise ordered by the court") to restrict its use when the assumption underlying the rule (beneficial services to debtors) is not evident.

IV. CONCLUSION

By order of even date, this Court shall order that:

1. Attorney Lafayette file within 14 days from the entry of such order an updated statement in each of the LaFrance, Oyola, Rolon, Daigneault, Caci and Davis cases listing:

43

    a.    the dates and amounts of all payments received from the debtors and/or the Chapter 13 trustee; and

    b.    the allocation of any payment received to fees and expenses; and

2. the Chapter 13 trustee file within 7 days thereafter a response to the foregoing statements <u>only</u> if her records of payment differ from those of Attorney Lafayette;

3. within 45 days of the entry of the said order, Attorney Lafayette disgorge to each of debtors in the <u>Oyola</u>, <u>Rolon</u>, <u>Daigneault</u>, <u>Caci</u> and <u>Davis</u> cases all payments received from the debtors and/or the Chapter 13 trustee, excluding only the filing fee, and file with this Court within 7 days thereafter a certificate of compliance together with a copy of each check;

4. within 30 days of the entry of the said order, Attorney Lafayette disgorge to the debtor in the <u>LaFrance</u> case so much of the payments received from the debtor and/or the Chapter 13 trustee which may exceed the amount allowed herein, and shall file within 7 days thereafter a certificate of compliance together with a copy of his check to the debtor, if any;

5. within 120 days of the entry of the said order, Attorney Lafayette file a fee application in each Chapter 7 and 13 case in the District of Massachusetts in which he appears on behalf of a debtor, but only if he has a claim for unpaid compensation or expense reimbursement either against the debtor or the estate;

6. Attorney Lafayette's claim for unpaid compensation or expense reimbursement be deemed waived in any case in respect to which he fails to comply with paragraph 5 above; and

7. on and after the entry of this order, the Chapter 13 trustee not make any payments to Attorney Lafayette on account of any request for compensation or reimbursement of expenses absent a court order;

8. on and after the entry of this order, Attorney Lafayette deposit any payment received from a Chapter 13 or 7 debtor in the District of Massachusetts in his client trust account and refrain from disbursing those funds until and unless a fee application permitting such disbursement is granted by the bankruptcy judge assigned to such case, unless such judge orders otherwise; and

44

9. the terms set forth in paragraphs 7 and 8 hereof be reviewed by this Court at intervals set by the court in its sole discretion, the first such review to occur approximately 12 months herefrom.

DATED:   June 10, 2004

_____
Henry J. Boroff
United States Bankruptcy Judge

cc:   Francis Lafayette, Esq.
      Denise Pappalardo, Chapter 13 trustee
      United States trustee
      Debtors

45

# United States Bankruptcy Court
## District of Massachusetts

In re:

PETER AND DENISE CACI,

Debtor

Chapter 7

Case No. 02-47249

## ORDER

For the reasons set forth in this Court's Memorandum of Decision of even date, the Application for Compensation filed by Attorney Francis Lafayette in this case is DISALLOWED; and

it is further ordered that:

a. Attorney Lafayette file within 14 days from the entry of this order and serve upon the debtors, attorney Joseph B. Collins, Esq., the United States trustee and the Chapter 13 trustee an updated statement listing:

   1. the dates and amounts of all payments received from the debtors and/or the Chapter 13 trustee; and

   2. the allocation of any payment received to fees and expenses;

2. the Chapter 13 trustee and the debtors file within 7 days thereafter a response to the foregoing statements <u>only</u> if their records of payment differ from those of Attorney Lafayette; and

3. within 45 days of the entry of the said order, Attorney Lafayette disgorge to Joseph B. Collins, Esq, as counsel to the debtors, all payments received from the debtors and/or the Chapter 13 trustee, excluding only the filing fee, and file with this Court within 7 days thereafter a certificate of compliance together with a copy of the check to counsel to the debtors.

DATED:   June 10, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc: Francis Lafayette, Esq.; Denise Pappalardo, Chapter 13 trustee; United States trustee; Joseph B. Collins, Esq.; Peter and Denise Caci

# United States Bankruptcy Court
# District of Massachusetts

| | |
|---|---|
| In re:<br><br>PETER AND DENISE CACI,<br><br>Debtor | Chapter 7<br><br>Case No. 02-47249 |

### ORDER

The instant Notice of Appeal of this Court's order of June 10, 2004 was filed untimely, pursuant to Fed. R. Bankr. P. 8002(a). Accordingly, pursuant to authority granted and direction provided by LR, D.Mass. 203(a), this Court hereby dismisses the said appeal for want of jurisdiction. See In re Abdallah, 778 F.2d 75, 77 (1st Cir. 1985).

DATED:   June 29, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:   Francis Lafayette, Esq.
      Denise Pappalardo, Chapter 13 trustee
      United States trustee
      Peter and Denise Caci
      Joseph Collins, Esq.

# United States Bankruptcy Court
# District of Massachusetts

| | |
|---|---|
| In re: | ) |
| | ) Chapter 7 |
| PETER AND DENISE CACI, | ) |
| | ) Case No. 02-47249-HJB |
| Debtors | ) |

## ORDER

For the reasons set forth in this Court's Memorandum of Decision of even date, the "Motion for Reconsideration and to Allow Late Filing of Appeal on Grounds of Excusable Neglect (Fed. R. Bankr. P. 8002(c))" filed by Attorney Francis Lafayette is DENIED.

DATED:   July 8, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:   Francis Lafayette, Esq.
      Denise Pappalardo, Chapter 13 trustee
      United States trustee
      Peter and Denise Caci

# United States Bankruptcy Court
## District of Massachusetts

| | |
|---|---|
| In re:<br><br>JOSEPH L. LaFRANCE,<br><br>Debtor | Chapter 13<br><br>Case No. 02-42450-HJB |
| In re:<br><br>MARTA L. OYOLA,<br><br>Debtor | Chapter 13<br><br>Case No. 02-45398-HJB |
| In re:<br><br>HECTOR L. ROLON,<br><br>Debtor | Chapter 13<br><br>Case No. 02-45994-HJB |
| In re:<br><br>KATHLEEN M. DAIGNEAULT,<br><br>Debtor | Chapter 13<br><br>Case No. 02-46689-HJB |
| In re:<br><br>PETER AND DENISE CACI,<br><br>Debtor | Chapter 7<br><br>Case No. 02-47249-HJB |



| In re: | ) | |
| --- | --- | --- |
| | ) | Chapter 13 |
| MARK BENNETT and | ) | |
| ANGELA BENNETT | ) | Case No. 03-40074-HJB |
| | ) | |
| Debtor | ) | |

| In re: | ) | |
| --- | --- | --- |
| | ) | Chapter 13 |
| STEFAN DAVIS, | ) | |
| | ) | Case No. 03-40199-HJB |
| Debtor | ) | |

## MEMORANDUM OF DECISION

Before the Court is a "Motion for Reconsideration and to Allow Late Filing of Appeal on Grounds of Excusable Neglect (Fed. R. Bankr. P. 8002(c))" (the "Motion") filed by Attorney Francis Lafayette ("Attorney Lafayette"). The Motion does present an ironic picture, in that it seeks leave to file late an appeal of this Court's order of June 10, 2004 which, in turn, took action to ameliorate a variety of similar acts of neglect by Attorney Lafayette. See In re LaFrance, et. al., 2004 WL 1376363 (Bankr. D. Mass.).

As in the underlying case(s), Attorney Lafayette cites his allegedly poor physical condition and the side effects of medication as cause for his having failed to meet this important deadline. In the underlying cases, he claimed to have suffered from dental and back problems. Here, he claims to suffer from diabetes and polyneuropathy.

2

As in the LaFrance decision, this Court finds the existence of the alleged illnesses insufficient to justify Attorney Lafayette's failure to timely act. It is unlikely that either or any of these alleged conditions interfered in any material way with his ability to file a timely notice of appeal. This Court has checked with the records of the Clerk's Office and is advised (and takes judicial notice) that during the period of June 10, 2004 to June 21, 2004 in which the filing would have been timely, Attorney Lafayette:

1. appeared before this Court on June 16, 2004 in five (5) separate hearings; and
2. electronically filed eighty three (83) pleadings, five (5) of which were new bankruptcy cases, spread throughout the relevant period.[1]

A copy of that listing is attached hereto.

In light of the foregoing, this Court finds that Attorney Lafayette's failure to timely file his notice of appeal was within his control and resulted from his own inexcusable negligence. The Motion will, accordingly, be denied. A separate Order shall issue.

DATED:   July 8, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:   Francis Lafayette, Esq.
      Denise Pappalardo, Chapter 13 trustee
      United States trustee
      Debtors

---

[1] Eighteen were filed on weekend days.

3

# Report of Filings by Attorney Frances Lafayette
# June 10, 2004 through June 21, 2004

## June 10, 2004

**03-44298**
| | | |
|---|---|---|
| 53 | Motion to Reconsider | Bennett |
| 54 | Declaration Re: Electronic Filing | Bennett |

**03-45556**
| | | |
|---|---|---|
| 35 | Motion to Reconsider | Gorski |
| 36 | Declaration Re: Electronic Filing | Gorski |

**04-42668**
| | | |
|---|---|---|
| 11 | Schedules A-J | Adasiewicz |
| 12 | Chapter 13 Agreement between debtor and counsel | Adasiewicz |
| 13 | Chapter 13 Plan | Adasiewicz |
| 14 | Motion to Extend | Adasiewicz |
| 15 | Declaration Re: Electronic Filing | Adasiewicz |

**04-43304**
| | | |
|---|---|---|
| 1 | Voluntary Petition (Chapter 13)(Attorney) | Pascale |
| 3 | Statement of Social Security Number(s) | Pascale |
| 4 | Declaration Re: Electronic Filing | Pascale |

**04-43338**
| | | |
|---|---|---|
| 1 | Voluntary Petition (Chapter 13)(Attorney) | Cabrera |
| 2 | Statement of Social Security Number(s) | Cabrera |
| 3 | Declaration Re: Electronic Filing | Cabrera |

Total Filings on:  **June 10, 2004**   15



June 11, 2004

**03-46928**
- 24  Motion to Convert Case to Chapter 7 — Moccio
- 25  Declaration Re: Electronic Filing — Moccio

**03-47195**
- 37  Opposition — Kelly
- 38  Opposition — Kelly

Total Filings on:  June 11, 2004     4


June 13, 2004

**04-43053**

| | | |
|---|---|---|
| 8 | Schedules A-J | McCarthy |
| 9 | Chapter 13 Plan | McCarthy |
| 10 | Motion to Extend | McCarthy |
| 11 | Chapter 13 Agreement between debtor and counsel | McCarthy |
| 12 | Declaration Re: Electronic Filing | McCarthy |

Total Filings on:   June 13, 2004     5



**June 14, 2004**

**02-45468**
   123    Stipulation                                                    Babb

**04-43026**
    9    Schedules A-J                                       Austin
   10    Declaration Re: Electronic Filing           Austin

**04-43053**
   13    Notice                                                   McCarthy

Total Filings on:   June 14, 2004    4